IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD J. FRIEDMAN JR.,** *as Administrator of the Estate on behalf of Michael Bratek,*

    **Plaintiff,**

v.

**CASTLE AVIATION, et al.**

    **Defendants.**

Case No. 2:09-cv-749

JUDGE EDMUND A. SARGUS, JR.

MAGISTRATE JUDGE TERENCE P. KEMP

## OPINION AND ORDER

Plaintiff, Richard J. Friedman, as Administrator of the Estate on behalf of Michael Bratek, brings this tort action against Defendant Columbus Regional Airport Authority ("the CRAA"), among other defendants.[1] This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The matter for consideration now before the Court is Defendant Columbus Regional Airport Authority's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 61). This motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion is denied.

### I. Background

On December 5, 2007, Michael Bratek suffered fatal injuries in an airplane accident which occurred shortly after take-off from the Rickenbacker International Airport in Columbus, Ohio. This action followed. In his original Complaint, Plaintiff asserted a claim for negligence against the CRAA based upon allegations involving a contract between CRAA and Total Airport Services for de-icing services that Plaintiff contended had been negligently performed. Upon

---

[1] Plaintiff has also named as Defendants the Cessna Aircraft Company, Castle Aviation, Avion Capital Corporation, Total Airport Services, and the Estate of James A. Babcock. Total Airport Services has been dismissed as a party to this action. The remaining defendants are not parties to the motions currently under the Court's consideration. Accordingly, the Court's recitation of facts will be limited to the facts relating only to the moving Defendant, the CRAA.

learning that Total Airport Services was not the entity responsible for the de-icing of the aircraft that crashed, Plaintiff dismissed Total Airport Services as a party. Thereafter, the CRAA moved to dismiss for failure to state a claim on which relief can be granted on the ground that Total Airport Services, the agent alleged to have de-iced the airplane, had been dismissed. Plaintiff indicated that he intended to amend his Complaint to add allegations concerning the entity that had in fact performed the de-icing services. Accordingly, the Court denied the CRAA's motion to dismiss and permitted Plaintiff to "amend his Complaint for the sole purpose of stating claims against the CRAA for (i) negligence in hiring and (ii) vicarious liability for the negligence of the agent that performed deicing services." (Doc. 55.)

Plaintiff subsequently filed his First Amended Complaint, reasserting his claim for negligence against the CRAA. Plaintiff alleges that the CRAA contracted with AirNet Systems, Inc. ("AirNet") to provide de-icing and ramp services for aircraft at the Rickenbacker Airport. According to Plaintiff, AirNet, by virtue of its contract, acted as an employee or agent of the CRAA in providing the de-icing and ramp services and that in such capacity AirNet used an inappropriate de-icing fluid on the aircraft given the type of aircraft, the weather conditions, and the length of time the aircraft remained on the ground before take-off. Plaintiff contends that the CRAA and AirNet knew or should have known that AirNet's de-icing procedures failed to comport with Federal Aviation Administration recommendations. Plaintiff also alleges that use of the improper de-icing fluid under the existing conditions was a direct cause of the crash that resulted in Mr. Bratek's death. Plaintiff claims that the CRAA is directly liable, under the theory of negligent hiring, for its own conduct in contracting with AirNet to perform de-icing services, and that the CRAA is indirectly liable, under the theory of vicarious liability, for AirNet's conduct in the way it carried out the de-icing services it was contracted to perform.

Although Plaintiff alleges negligent conduct by AirNet, Plaintiff has not named AirNet as a defendant. According to the First Amended Complaint, Plaintiff has not added AirNet as a

2

party to this action because Mr. Bratek was an employee of AirNet at the time of the accident, and, therefore, a negligence claim against AirNet is barred by the immunity accorded by Ohio's Worker's Compensation statute.

The CRAA now moves to dismiss the claims against it for failure to state a claim upon which relief can be granted.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require 'detailed factual allegations.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'"; "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Moreover, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

## III.   Discussion

In support of its motion to dismiss, the CRAA first contends that Plaintiff has failed to assert sufficient factual allegations to state a claim for negligent hiring. Second, the CRAA argues that Plaintiff's claim for vicarious liability must be dismissed because the CRAA's

3

alleged agent, AirNet, cannot be held directly liable. Finally, the CRAA urges this Court to disregard any legal theory proffered by Plaintiff that exceeds the scope this Court's prior order permitting Plaintiff to amend the Complaint. This Court addresses in turn each basis for dismissal.

### A. Negligent Hiring

Insofar as Plaintiff's direct negligence claim against the CRAA is grounded in a theory of negligent hiring, the CRAA seeks dismissal because the First Amended Complaint fails to allege facts asserting that AirNet had a past history of incompetent or tortious conduct about which the CRAA knew or could have discovered through reasonable investigation, before or at the time of hiring. In other words, the CRAA contends that Plaintiff must allege facts tending to show that the CRAA knew of AirNet's tortious propensities in providing de-icing services at some point before entering into a contract with AirNet to provide such services or, at the latest, at the time the CRAA and AirNet entered their agreement. *See Zimmer v. Ashland Univ.*, No. 1:00CV0630, 2001 U.S. Dist. LEXIS 15075, at *37, 38 (N.D. Ohio 2001) (granting summary judgment to the extent that plaintiff sought relief based upon negligent hiring absent showing that "'the individual hired had a past history of criminal, tortious, or otherwise dangerous conduct about which the . . . knew or could have discovered through reasonable investigation.'" (quoting *Byrd v. Faber*, 565 N.E.2d 584 (Ohio 1991)). According to the CRAA, the absence of such factual allegations is fatal to Plaintiff's claim because, in the CRAA's view, Ohio law recognizes negligent retention as a distinct claim from negligent hiring, and because the CRAA believes that this Court, in permitting Plaintiff amend his complaint, expressly limited Plaintiff's direct negligence claim to a claim for negligent hiring. Thus, according to the CRAA, Plaintiff's allegations regarding knowledge of AirNet's incompetence that the CRAA gleaned after entering the contract are insufficient to state a claim for negligent hiring. The CRAA misapprehends both Ohio law and this Court's prior ruling.

4

A federal court sitting in diversity applies the substantive law of the state in which the federal court sits. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). Under Ohio law, "the elements for any negligence claim consist of a duty, a breach of that duty, and injury proximately resulting from the breach." *Linder v. American Nat'l Ins. Co.*, 798 N.E.2d 1190, 1197 (Ohio Ct. App. 2003) (citing *Menifee v. Ohio Welding Prod., Inc.*, 472 N.E.2d 707 (Ohio 1984)). CRAA's contention to the contrary notwithstanding, Ohio caselaw identifies the elements of a negligent hiring and retention claim as a single cause of action: "The elements of *an action for negligent hiring and retention* are (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employee's act or omission causing plaintiff's injuries, and (5) the employer's negligence *in hiring or retaining* the employee as the proximate cause of plaintiff's injury." *Id.* (citing *Evans v. Ohio State Univ.*, 680 N.E.2d 161 (Ohio Ct. App. 1996) (emphasis added); *see also Ruta v. Breckinridge-Remy Co.*, No. E-80-39, 1980 Ohio App. LEXIS 12410, at *5 n. 1 (Ohio Ct. App. Dec. 12, 1980) (observing that negligent retention and negligent hiring require showing of same elements); *Zimmer v. Ashland Univ.*, No. 1:00CV0630, 2001 U.S. Dist. LEXIS 15075, at *40 n.5 (N.D. Ohio 2001) ("The tort of negligent hiring has been extended to encompass negligent retention.") (citing *Evans*, 680 N.E.2d 161; *Doe v. First Presbyterian Church*, 710 N.E.2d 367 (Ohio Ct. App. 1998); *Peters v. Ashtabula Metro. Housing Auth.*, 624 N.E.2d 1088 (Ohio Ct. App. 1993)). The fifth element (employer's negligent conduct as proximate cause) is presented in the disjunctive, i.e., "negligence in hiring or retaining." Thus, a plaintiff must establish as the proximate cause of plaintiff's injury either the employer's negligence in hiring the employee or the employer's negligence in retaining the employee. A plaintiff need not do both.

In this action, the CRAA's position appears to be based on the misunderstanding that this Court limited Plaintiff's claim for direct negligence exclusively to negligent hiring by not

5

expressly stating that Plaintiff's direct negligence claim could encompass a claim for negligent retention. The language in Plaintiff's initial Complaint alleged that the CRAA was negligent in both "hiring" and "contracting with" AirNet. The term "contracting with" implies an ongoing relationship. In permitting Plaintiff to amend his Complaint as to the direct negligence claim for the sole purpose of stating a claim for negligent hiring against the CRAA, the Court did not intend to prohibit Plaintiff from asserting additional facts regarding alleged negligent conduct in the CRAA's ongoing contractual relationship with AirNet. Given that Ohio law recognizes a single cause of action for negligent hiring and retention, Plaintiff must allege facts regarding the CRAA's conduct as proximate cause of Plaintiff's injury which tend to show that the CRAA negligently hired or negligently retained AirNet. Plaintiff has done so.

Regarding the first element, employment relationship, Plaintiff alleges that the CRAA contracted with AirNet for ramp services, including de-icing services, and that AirNet performed these services as the CRAA's agent at Rickenbacker International Airport, which premises are owned and operated by the CRAA. Doc. 56 ¶¶ 31, 33.[2] Factual allegations meeting the second and third elements, i.e., evidence of the employee's incompetence and evidence of employer's knowledge or constructive knowledge, are set forth as follows in Plaintiff's First Amended Complaint:

> 35. AirNet Systems inc. was negligent and incompetent in the use of Type-1 de-icing fluid on the accident aircraft for the following reasons:
> a. The accident aircraft, a Cessna Caravan 208B, has had more than two dozen accidents in icing conditions and is known to be sensitive to small amounts of ice on the protected and unprotected areas of the aircraft, so much so that the aircraft's certification for operation for flight into known icing conditions was changed and limited to "light icing" only after 20 years of service and an extensive investigation of its accident record by the [National Transportation Safety Board], the [Federal Aviation Administration] and the regulatory agencies of

---

[2] Paragraph No. 33 contains two references to "AirNet Services, Inc." Because Plaintiff does not refer to "AirNet Services, Inc." elsewhere in the First Amended Complaint, the Court believes that Plaintiff intended to refer in Paragraph No. 33 to "AirNet Systems, Inc." rather than "AirNet Services, Inc." as the entity with which Columbus Regional Airport Authority contracted for de-icing services at Rickenbacker International Airport.

6

numerous other nations, by virtue of the FAA Airworthiness Directive, AD 2006-06-06, issued more than a year before the accident.

  b. The Cessna 208B has been the subject of a Multi-District Litigation proceeding, consolidating over 30 claims for death and injury in the Cessna Caravan 208B aircraft in the [United States District Court] for the District of Kansas.

  c. This information was very controversial and was well known in the aviation cargo operations industry and was known or should have been known by both AirNet Systems, Inc. and the COLUMBUS REGIONAL AIRPORT AUTHORITY.

  d. Type-1 de-icing fluid would have been used with the knowledge of the COLUMBUS REGIONAL AIRPORT AUTHORITY on the premises of Rickenbacker International Airport with the understanding of both Defendant COLUMBUS REGIONAL AIRPORT AUTHORITY and AirNet Systems Inc. that Type-1 fluid has limited uses, provides no anti-icing effect, has very strict "hold-over" times that limit its effectiveness and is a poor choice of icing protection given the availability of commonly used Type-2 and Type-4 anti-icing fluids in the industry. This would have been a special concern for aircraft known to be as sensitive as the Cessna 208B in weather as severe as the conditions on December 5, 2007.

  e. Upon information and belief, AirNet Systems, Inc. operated at Rickenbacker International Airport since 1996 and the COLUMBUS REGIONAL AIRPORT AUTHORITY was aware of its business practices and the need to exercise the care of a reasonably prudent airport administrator in not permitting AirNet Systems Inc. to use deicing practices which were negligent, beneath industry standards and in derogation of both AirNet Systems, Inc.'s and the COLUMBUS REGIONAL AIRPORT AUTHORITIES [sic] obligation to provide service which protected the public from known risks to the safety of flight.

  f. The operation and dispatch of a Caravan 208B in moderate snowfall, with the utilization of Type-1 de-icing fluid, after the likely hold-over time had expired had likely occurred on numerous occasions known both to the COLUMBUS REGIONAL AIRPORT AUTHORITY and to AirNet Systems between 1996 and 2007 inasmuch as the Defendant CASTLE AVIATION and other operators regularly operated 208B aircraft out of the airport during this time period.

  g. The use of the Caravan 208B aircraft with its known history and design and manufacturing defects, on December 5, 2007, with deicing services which utilized Type-1 de-icing fluid, a take-off time which exceeded the fluids [sic] hold-over time in a moderate snowfall, all within the knowledge of all Defendants, including COLUMBUS REGIONAL AIRPORT AUTHORITY and the non-Defendant AirNet Systems Inc. constituted a proximate cause of this accident and the death of Plaintiff's Decedent, Michael Benton Bratek[.]

  h. The use of Type-1 de-icing fluid by the agent AirNet

7

>Systems inc. on December 5, 2007 was a direct and proximate cause of the crash of the accident aircraft, Castle Aviation's N28MG, and the death of Plaintiff's Decedent Michael Benton Bratek.
>
>i. The ongoing use of Type-1 de-icing fluid by AirNet Systems Inc. on Cessna 208B aircraft with that aircraft's accident and regulatory history and the recent limitations that were placed upon the Cessna 208B's operations envelope in icing conditions would have been known to a sophisticated operator of an international airport specializing in cargo operations and its administrative body such as the COLUMBUS REGIONAL AIRPORT AUTHORITY.
>
>j. COLUMBUS REGIONAL AIRPORT AUTHORITY and its agent AirNet Systems Inc. were sophisticated operators of cargo operations with extensive experience in all aspects of flight operation in winter weather. Both would have known that -1 degree Celsius temperature and a dew point of -2 degrees Celsius, in a moderate snowfall, and also given that departure was considered to be in night operating conditions, that no holdover period could have been determined for the use of Type-1 de-icing fluid on any FAA approved holdover chart. The chart would consider the precipitation as "heavy" and would not be able to formulate specific times. Type-1 could not be safely or legally used under these conditions. Further, by the definition provided in the holdover charts, the icing conditions would have been considered as heavy and the flight of a Cessna 208B would have been outside the Federal Aviation Administration's certification for this aircraft model consequently [sic] the aircraft was unairworthy and illegal.

(Doc. 56, ¶ 35.) In short, these subsections of Paragraph No. 35 allege facts creating a logical inference that during the ongoing contractual relationship between the CRAA and AirNet, which began in 1996 and continued through the date of the aircrash, AirNet, in its capacity as the CRAA's agent for providing de-icing services at Rickenbacker International Airport, had an ongoing business practice of incompetently using an inappropriate de-icing fluid on the type of aircraft that crashed and that, based upon the type of business the CRAA operated, it would have known that AirNet's business practices in using an inappropriate de-icing fluid were ongoing and incompetent.

As for the fourth element, i.e., evidence that the wrongdoer's actions caused Plaintiff's injuries, the First Amended Complaint alleges that AirNet's use of an inappropriate de-icing fluid given the prevailing conditions at take-off was a cause of the injuries and death suffered by

Plaintiff's decedent. Doc. 56 ¶ Paragraph No. 35 (g) and (h).

Finally, Paragraphs 31, 33, and 35 of the First Amended Complaint, taken together, satisfy the requirements of the fifth element, i.e., evidence of the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. These allegations create a logical inference that, at some point during its contractual relationship with AirNet, the CRAA became aware of AirNet's incompetence in using an inappropriate de-icing fluid as part of its ongoing business practice but did not terminate the contractual relationship despite being on notice of the substantial risk created by such business practice.

Because Plaintiff's First Amended Complaint asserts factual allegations sufficient to satisfy the elements of a negligent hiring and negligent retention claim, dismissal for failure to state a claim is unwarranted. Accordingly, Plaintiff shall be allowed to proceed to discovery on this claim.

### B. Vicarious Liability

The CRAA seeks dismissal of Plaintiff's claim for vicarious liability on the ground that its agent, AirNet, cannot be held directly liable. The CRAA bases its position on Plaintiff's admission that AirNet was not made a party to the case because Ohio's Workers' Compensation statute prohibits certain civil actions by employees against their employers. Specifically, the CRAA points to the following language from Plaintiff's First Amended Complaint: AirNet "was not joined as a party to this action due to the worker's compensation bar to civil suits by employees under applicable Ohio Law." Doc. 56 ¶ 35(m). In the CRAA's view, AirNet cannot be found liable for its own negligence in light of the "workers' compensation bar." Consequently, the CRAA contends, the CRAA cannot be held vicariously liable for AirNet's alleged negligence. Plaintiff argues that the CRAA improperly conflates the legal concepts of liability and immunity. This Court agrees.

The relevant provision of Ohio law concerning workers' compensation is found at Ohio

9

Revised Code § 4123.74. That section provides:

> Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.

Ohio Rev. Code § 4123.74. The issue presented in this case is whether the statutory language recited above protects from civil suit not only an employing entity, but also a principal for which the employing entity acts as an agent.

Ohio law provides that an agent who engages in tortious conduct is primarily liable for its actions, and the principal is merely secondarily liable. *Comer v. Risko*, 833 N.E.2d 712, 716 (Ohio 2005) (internal citations omitted). Under this rule, if the agent is assigned no liability, "it logically follows that there can be no liability imposed upon the principal for the agent's actions." *Id.* This is so because "[t]he liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal." *Id.* Stated otherwise, "a principal is vicariously liable only when an agent could be held directly liable." *National Union Fire Ins. Co. v. Wuerth*, 913 N.E.2d 939, 599 (Ohio 2009).

However, the Supreme Court of Ohio has expressly "rejected the argument that an employer [can] not be liable under the doctrine of *respondeat superior* if the employee [is] *immune* from personal liability." *State ex rel. Sawicki v. Lucas County Court of Common Pleas*, 931 N.E.2d 1082, 1088-89 (Ohio 2010) (citing *Adams v. Peoples*, 480 N.E.2d 428, 431 (Ohio 1985)) (emphasis added). Reiterating its previous holding that "a determination of immunity is not a determination of liability," the Supreme Court of Ohio declared that "[a]n employee's immunity from liability is no shield to the employer's liability for acts under the doctrine of

10

*respondeat superior.*" *Sawicki*, 931 N.E.2d at 1088-89 (quoting *Johns v. Univ. of Cincinnati Med. Assoc., Inc.*, 804 N.E.2d 19, 26 (Ohio 2004)).

In this action, the CRAA argues that *Sawicki* is inapposite because it did not overrule *Comer v. Risko*, 833 N.E.2d 712, which, as noted above, held that a principal cannot be held vicariously liable if the principal's agent is not directly liable. The CRAA also argues that what it terms the "Workers' Compensation Bar" to civil actions does not constitute statutory immunity, but is, rather, "the equivalent to a finding of no liability based on the acts of the alleged agent." Doc. 69 at 7. In support of this position, the CRAA cites *Saunders v. Holzer Hosp. Found.*, No. 08CA11, 2009 WL 1228756 (Ohio Ct. App. 2009). The CRAA's reliance on *Saunders* is misplaced.

First, this Court notes that *Saunders* is an unpublished lower court opinion decided before *Sawicki*. Given that *Sawicki* represents the Ohio Supreme Court's most recent opinion involving the interplay of statutory immunity and a principal's vicarious liability for the acts of an agent, this Court looks to *Sawicki* for guidance. As relevant to the CRAA's contention that *Sawicki* did not overrule *Comer*, the *Sawicki* court observed that *Comer* "was decided narrowly and turned on a theory of agency by estoppel" and that "the claim [in *Comer*] was extinguished by the statute of limitations, not by the application of immunity." *Sawicki*, 931 N.E.2d at 1089. These observations undergirded the court's declaration that "if [the employee] has committed tortious acts but is shielded by statutory immunity, that immunity is personal, and the conduct itself remains actionable." *Id.*

Second, *Saunders* is inapplicable as a substantive matter. *Saunders* upheld a summary judgment ruling in favor of a defendant-hospital and its employee in a suit brought by another hospital employee for injuries she sustained in two incidents while working for the hospital.

11

The *Saunders* court held that, under the doctrine of election of remedies, the defendants could not be held liable. The court did not, as the CRAA contends in this action, determine that "a Workers' Compensation bar is the equivalent to a finding of no liability."[3]

In addition to not standing for the CRAA's asserted proposition, *Saunders* in fact treats the Workers' Compensation protection as statutory immunity from suit. *Saunders*, 2009 WL 1228756, at **4-5 ("'Cases construing R.C. 4123.74 have held that this statute provides to employers immunity from liability to employees so long as the employer was in full compliance with the workers' compensation statutes at the time of the accident.'" (quoting *Maynard v. H.A.M. Landscaping, Inc.*, 849 N.E.2d 77, at ¶ 17 (Ohio Ct. App. 2006) (citing *Catalano v. Lorain*, 832 N.E.2d 134 (Ohio Ct. App. 2005); *Jones v. Multi-Color Corp.*, 670 N.E.2d 1051 (Ohio Ct. App. 1995))); *see also Smith v. Turbo Parts LLC*, No.: 2:10-cv-00202, 2011 WL 796793, at *2 (S.D. Ohio 2011) ("[T]he plain language of Ohio Revised Code § 4123.74 demonstrates that the statute confers immunity on complying employers only . . . the injured party is an employee of the employer.") As discussed above, immunity from suit is not transferrable from an agent to its principal. *Sawicki*, 931N.E.2d at 1088-89. Because Ohio cases treat Workers' Compensation protection as the conferring of immunity rather than a determination of no liability, the CRAA is not entitled to dismissal as the record stands at present. Plaintiff is therefore entitled to proceed on the claim for vicarious liability.

## IV. Conclusion

For the reasons discussed above, the Court **DENIES** the Columbus Regional Airport Authority's Motion to Dismiss (Doc. 61). Having so ruled, the also Court **DENIES as moot** the Columbus Regional Airport Authority's Motion for Ruling on Motion to Dismiss Plainitff's Amended Complaint (Doc. 74) and Motion Requesting Scheduling of a Case Management

---

[3] Here, neither party has alleged, much less demonstrated, that Plaintiff applied for and received Workers' Compensation benefits, a circumstance that potentially could implicate the doctrine of election of remedies.

12

Conference (Doc. 77).

**IT IS SO ORDERED.**

| | |
|---|---|
|    5-5-2011    | /s/ Edmund A. Sargus, Jr. |
| **DATED** | **EDMUND A. SARGUS, JR.**<br>**UNITED STATES DISTRICT JUDGE** |